RECORD NO. 11-3037

ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED

In The

# United States Court of Appeals

### For The District of Columbia Circuit

# TYRONE HINES,

*Appellant,*

# v.

# UNITED STATES OF AMERICA,

*Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA CIRCUIT

————————

## BRIEF OF APPELLANT

————————

**Matthew Gardner Kaiser**
THE KAISER LAW FIRM PLLC
**910 17th Street, N.W., Suite 800**
**Washington, DC 20006**
**(202) 640-2850**

*Counsel for Appellant*

## Certificate as to Parties, Rulings, and Related Cases

Pursuant to D.C. Circuit Rule 28(a)(1), the Appellant hereby states as follows:

### A.     Parties and Amici.

The parties below were Tyrone Hines and the United States. The parties to this appeal are Tyrone Hines and the United States. There are no intervenors or *amici*.

### B.     Rulings Under Review.

In this appeal, the appellant, Mr. Hines, contends that his conviction should be vacated and the case remanded for a competency hearing; that his sentence should be vacated and remanded for resentencing; and that his conviction should be vacated and the indictment against him dismissed.

### C.     Related Cases.

There are no related cases.

# Table of Contents

**Page**

Certificate as to Parties, Rulings, and Related Cases ........................... i

Table of Authorities ...................................................................... v

Jurisdictional Statement ................................................................ 1

Statement of the Issues ................................................................. 1

Statutes and Regulations ............................................................... 2

Statement of the Case ................................................................... 2

Statement of Facts ....................................................................... 3

      The Speedy Trial Exclusion Motions ......................................... 3

      Mr. Hines Is Indicted, Arraigned, And Corresponds With
      The Court .......................................................................... 4

      Mr. Hines' Relationship With New Counsel And The
      Speedy Trial Motions ........................................................... 7

      The Hearing On The Motion to Suppress Statements ................. 13

      Mr. Hines' Third Attorney and Trial ....................................... 15

      Sentencing ....................................................................... 18

Summary of the Argument ............................................................ 20

Standard of Review ..................................................................... 22

Argument ................................................................................. 23

I.     The District Court Erred By Not Ordering A Competency
      Hearing .......................................................................... 23

A. The district court was right to question Mr. Hines' competence.................................................... 25

B. The basis for the district court's finding that Mr. Hines was competent was faulty.................................... 29

 1. The district court inaccurately stated and relied on the opinions of prior counsel................ 29

 2. Mr. Acree's statement that Mr. Hines was competent should have been wholly disregarded............................................................ 30

 3. The mental health evaluation was done for a different purpose and does not opine on Mr. Hines' competence ............................................... 31

II. The District Court Erred In Applying A Two-Level Enhancement For Obstruction of Justice .................................. 33

III. The District Court Did Not Make Adequate Findings That Extending Time Under The Speedy Trial Act Was In The Interests Of Justice......................................................... 36

A. The district court's findings that an exclusion of time was in the interests of justice were perfunctory ..................................................... 38

B. Perfunctory findings are not sufficient to exclude time.............................................................. 40

C. The defendant's consent to exclude time is not sufficient........................................................ 43

D. Mr. Hines' counsel was constitutionally ineffective for failing to move to dismiss the indictment in light of the failure to indict Mr. Hines within the time required by the Act ............................................... 43

iii

Conclusion ........................................................................... 46

     The Court should vacate Mr. Hines' conviction and
     remand for a competency hearing ........................................... 46

     The Court should remand for resentencing in light of the
     error in imposing an enhancement under section 3C1.1 ......... 47

     The Court should remand with instructions to dismiss the
     indictment .................................................................................. 48

Certificate of Compliance

Certificate of Filing and Service

Addendum

# Table of Authorities

**Page(s)**

## Cases

*Assn of American Physicians and Surgeons v. Clinton*,
187 F.3d 655 (D.C. Cir 1999) .................................................. 35

*\*Cooper v. Oklahoma*,
517 U.S. 348 (1996) ................................................................ 23

*Medina v. California*,
505 U.S. 437 (1992) ................................................................ 25

*Riggins v. Nevada*,
504 U.S. 127 (1992) ................................................................ 23

*Sena v. New Mexico State Prison*,
109 F.3d 652 (10th Cir. 1997) ................................................. 25

*Strickland v. Washington*,
466 U.S. 668 (1984) .......................................................... 45, 46

*United States v. Bisong*,
645 F.3d 384 (D.C. Cir. 2011) ................................................ 22

*United States v. Bryant*,
523 F.3d 349 (D.C. Cir. 2008) ........................ 22, 37, 40, 41, 42

*United States v. Caldwell*,
543 F.2d 1333 (D.C. Cir. 1974) .............................................. 26

*United States v. Dorcely*,
454 F.3d 366 (D.C. Cir. 2006) ................................................ 33

*United States v. Dunnigan*,
507 U.S. 87 (1993) .................................................................. 34

*Authorities Chiefly Relied Upon are Marked with an Asterisk

v

*United States v. Fennell*,
    53 F.3d 1296 (D.C. Cir. 1995) ................................................... 45

*United States v. Jones*,
    642 F.3d 1151 (D.C. Cir. 2011) ......................................... 23, 32

*United States v. Kim*,
    23 F.3d 513 (D.C. Cir. 1994) ................................................... 22

*United States v. Marshall*,
    2011 U.S. App. LEXIS 11686,
    No. 09-3140 (D.C. Cir. June 9, 2011) .......................... 36, 44, 45

*United States v. Montague*,
    309 U.S. App. D.C. 220, 40 F.3d 1251 (D.C. Cir. 1994)... 34, 35

*United States v. Mouling*,
    557 F.3d 658 (D.C. Cir. 2009), *cert. denied*,
    130 S. Ct. 795, 175 L. Ed. 2d 559 (2009) ................................ 45

*United States v. Perez*,
    603 F.3d 44 (D.C. Cir. 2010) ....................................... 22, 24, 28

*United States v. Sanders*,
    485 F.3d 654 (D.C. Cir. 2007) .............................. 22, 37, 41, 42

*United States v. Tann*,
    532 F.3d 868 (D.C. Cir. 2008) ................................................. 33

*United States v. Williams*,
    113 F.3d 1155 (10th Cir. 1997)................................................ 25

*Zedner v. United States*,
    547 U.S. 489 (2006) .................................. 36, 37, 38, 39, 41, 43

**Constitutional Provision**

U.S. CONST. amend. VI ..................................................... 44

**Statutes**

18 U.S.C. § 2113............................................................... 3

18 U.S.C. § 2113(a) .......................................................... 2

18 U.S.C. § 3131(h)(7)(A).................................................. 40

*18 U.S.C. § 3161 ............................................................. 41

18 U.S.C. § 3161(b) .............................................. 36, 40, 44

18 U.S.C. § 3161(h) .................................................. 36, 37

18 U.S.C. § 3161(h)(7) .................................................... 37

18 U.S.C. § 3161(h)(7)(A).................................. 37, 40, 41, 42

18 U.S.C. § 3161(h)(8) .................................................... 38

18 U.S.C. § 3161(h)(8)(A)................................................. 41

18 U.S.C. § 3164(b) ........................................................ 40

18 U.S.C. § 3231.............................................................. 1

18 U.S.C. § 3742(e) ........................................................ 22

*18 U.S.C. § 4241 .................................................... 22, 24

18 U.S.C. § 4241(a) ..................... 1, 23, 24, 25, 28, 30, 32

18 U.S.C. § 4241(b) ........................................................ 24

18 U.S.C. § 4241(c) ........................................................ 24

*18 U.S.C. § 4247...................................................................... 24

18 U.S.C. § 4247(d)............................................................... 24

28 U.S.C. § 1291...................................................................... 1

Judicial and Technical Amendments Act of 2008, 110 Pub. L. No. 406, § 13 (2008)................................................................. 41

**Guideline**

U.S.S.G. § 3C1.1 .................................................. 18, 19, 20, 33, 35, 47

**Rule**

Fed. R. Crim. P. 11(c)(1)(C)................................................. 6

## Jurisdictional Statement

The district court had jurisdiction in this case pursuant to 18 U.S.C. § 3231 and imposed sentence on March 30, 2011. The district court issued its Judgment on April 7, 2011. A notice of appeal was timely filed on April 11, 2011. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## Statement of the Issues

This case presents three issues.

**Issue 1**: Eighteen U.S.C. section 4241(a) requires a district court to order a competency hearing whenever there is reasonable cause to believe that a defendant may not be competent to stand trial. Here, the district court *sua sponte* raised Mr. Hines' competency, then found him competent without a hearing – even though in a prior case Mr. Hines was not guilty by reason of insanity. Was it error not to order a competency hearing as required by section 4241(a)?

**Issue 2**: A district court can apply a two-level sentencing guidelines enhancement for perjured testimony by the defendant only if it finds, by clear and convincing evidence, that the defendant was not mistaken when he made the prior false statement. Here, the district court imposed the two-level enhancement, but disregarded its own

1

prior suggestion that Mr. Hines could simply have been confused. Did the district court err by rejecting its own characterization of Mr. Hines' mental state?

**Issue 3**: The Speedy Trial Act requires that a person be indicted within thirty days of being arrested, unless time is excluded. Time can be excluded "in the interests of justice" if the court makes factual findings that the specific circumstances of the case require an exclusion. Here, the district court excluded time "in the interests of justice" without providing the required factual findings. Did the district court err by failing to make the required factual finding when excluding time?

**Statutes and Regulations**

The Statutes are included in the addendum to this Brief.

**Statement of the Case**

On March 9, 2010, Tyrone Hines was charged by criminal complaint with a violation of 18 U.S.C. § 2113(a) for an alleged bank robbery on February 26, 2010, and two alleged attempted bank robberies on March 4, 2010. He was indicted for the same offenses on June 3, 2010.

Mr. Hines was convicted of the three counts in the indictment by a jury on October 28, 2010. On March 30, 2011, Mr. Hines was sentenced to 132 months in prison. A judgment issued on April 7, 2011.

## Statement of Facts

Mr. Tyrone Hines was charged by criminal complaint on March 9, 2010, with bank robbery and attempted bank robbery in violation of 18 U.S.C. § 2113. Joint Appendix (J.A.) at 20.

<u>The Speedy Trial Exclusion Motions</u>

The government and Mr. Hines, through counsel, filed a Joint Motion to Exclude Time Under the Speedy Trial Act on April 6, 2010. J.A. at 22. The parties noted that without the relief requested in this motion Mr. Hines must be charged by information or indictment within thirty-days of his arrest on the criminal complaint. J.A. at 22 ¶ 2. Counsel for Mr. Hines and counsel for the government asked the court to exclude thirty days under the Speedy Trial Act because "plea negotiations would be beneficial and may lead to a disposition in this case without a trial." J.A. at 22.

The same day this joint motion was filed, it was granted. United States Magistrate Judge Deborah Robinson found "that it is in the

3

interest of justice, and outweighs the interest of the public and the

defendant in a speedy trial, to exclude the delay resulting from the

ongoing plea negotiations in the case." J.A. at 25.

On April 30, 2010, counsel for the government and counsel for

Mr. Hines filed a second motion to exclude time under the Speedy

Trial Act. J.A. at 26. The motion stated that plea negotiations were

ongoing, and that "[d]efense counsel has arranged for a mental health

evaluation for defendant which could impact the negotiations." J.A. at

27. The motion sought to exclude time through June 7, 2010. J.A. at

27. This motion was granted by a minute order noted on the district

court's docket. J.A. at 5. The docket does not reflect any findings

accompanying the minute order.

Mr. Hines Is Indicted, Arraigned, And Corresponds With The Court

Mr. Hines was indicted on June 3, 2010. J.A. at 29.

On June 15, 2010, a letter from Mr. Hines to Senior Judge

Theodore R. Newman was filed in the district court's docket, though

the letter indicates that it was sent on May 17.[1] J.A. at 69. In the

letter, Mr. Hines states, accurately, that "it has been over sixty-days

---

[1]     It is unclear why Mr. Hines sent this letter, which clearly relates
to his case in federal court, to a retired judge on the District of
Columbia Court of Appeals, instead of the district court.

and I haven't been indicted on any charges." J.A. at 69. He continues

that the law "states any information or indictment charging an offense

shall be filed within thirty days from the date on which such

individual was arrested or served with a summons in connection with

such charges." J.A. at 69. Mr. Hines concludes that "my constitutional

[sic] rights have been violated and if and [sic] indictment is handed

down it should be dismissed with prejudice." J.A. at 71.

Mr. Hines was arraigned on June 16, 2010. He was represented

by Assistant Federal Public Defender Michelle Peterson at this

hearing. J.A. at 31. At the hearing, the district court inquired about the

prior Speedy Trial exclusions. The court noted that the although the

exclusions were granted without Mr. Hines presence in court, it would

have been a better practice to have Mr. Hines present when the

exclusions of time were requested. J.A. at 35-36. The court also noted

that an exclusion of time under the Speedy Trial Act requires that the

exclusion of time be the result of a determination by the court – an

exclusion cannot be accomplished merely by the consent of the parties

– and the court must discuss whether the exclusion is in the interests

of justice. J.A. at 36.  Ultimately, the district court concluded that "I

think I'm going to leave it, and we'll proceed and set other dates and proceed with the case." J.A. at 40.

Mr. Hines' counsel also discussed the mental health examination that was the basis of the second speedy trial exclusion at the arraignment. J.A. at 37, 54. Counsel explained the purpose behind the mental health evaluation that was mentioned in the second motion to exclude, saying that "the mental health evaluation – that was at my request, and it's still an ongoing process. It was done for the purposes of trying to convince the government to give Mr. Hines a better plea offer." J.A. at 37. Expanding on this slightly, Mr. Hines' counsel also explained that the government had proposed a binding plea to 10 years under Federal Rule of Criminal Procedure 11(c)(1)(C), and that she responded "well, let me get a mental health evaluation and see if I can convince you that it ought to be an 11(c)[(1)(C)] to something else." J.A. at 54.

At no point during this hearing did Mr. Hines' counsel discuss whether Mr. Hines was competent to stand trial.

The district court then turned to the letter that Mr. Hines wrote to Judge Newman. J.A. at 51. Mr. Hines counsel told the district court that she was "willing to continue to try to work with Mr. Hines" but

6

that they had "had some difficulties." J.A. at 52. Mr. Hines, for his

part, indicated that he had filed a bar complaint against his attorney.

J.A. at 57. He did say, however, that he was willing to work with his

lawyer. J.A. at 59. After some conversation with the court though, Mr.

Hines indicated that a new lawyer would be preferable. J.A. at 63. The

court took his request under advisement.

Less than a week later, on June 21, 2010, another status hearing

was held, and new counsel for Mr. Hines – Rudolph Acree – was

appointed.

### Mr. Hines' Relationship With New Counsel And The Speedy Trial Motions

Mr. Acree appeared on Mr. Hines behalf at a status hearing a

few weeks later, on July 13, 2010. J.A. at 98. Mr. Hines was not

present at this hearing. J.A. at 98. The district court probed counsel for

the parties about whether the case was likely to result in a plea.

Explaining how his conversations with Mr. Hines were going, Mr.

Acree explained,

> I can say that it takes some time to talk to Mr. Hines, and
> I know that he and I had to get to the point . . . but it took
> me a bit of time to get back to him. I have to kind of do it
> in steps with Mr. Hines, quite frankly. . . . So, you know,
> I am going to talk to Mr. Hines about [new evidence in
> the case that Mr. Hines' fingerprints were on a demand

note used in a robbery], but to be honest with you, he was
a little less predictable than, say, ordinarily is the case.
J.A. at 106.

Later that month, on July 19, 2010, counsel for Mr. Hines filed

a motion asking the court to reconsider release for Mr. Hines because

his rights under the Speedy Trial Act were violated. J.A. at 112. Mr.

Acree did not file the motion to dismiss under the Speedy Trial Act

previously anticipated by Mr. Hines' first attorney. *See* J.A. at 42. The

district court denied Mr. Hines' motion in a written opinion. J.A. at

157-167. The court noted that Mr. Hines' counsel did not raise

whether the prior exclusions were sufficient for the thirty-day Speedy

Trial Clock. J.A. at 163. The district court found that "the ends of

justice are served by excluding the time from April 6, 2010 through

June 7, 2010, for purposes of permitting ongoing plea negotiations,

and that such exclusion outweighs the best interest of the public and

the defendant in a speedy trial." J.A. at 166. The court provided no

further analysis of why it balanced the need for a speedy trial against

the possibility of plea negotiations in this way.

On July 22, the court held another status conference. J.A. at

116. At the start of the conference, counsel for Mr. Hines made an

unusual request to the court.

8

> The one thing that I wanted to ask on behalf of Mr. Hines
> was one of the things that he asked me for, and I didn't
> have access to it, at least not up until this point, was a
> copy – a signed copy of the indictment. I know I asked
> the Clerk, I know she didn't see one here and said she
> may be able to get one to me. I would ask the Court, I
> don't know if the Court has one that is actually signed.
> The Court:  I have one. I mean, it's not – I mean, signed
> by the attorney – by the –
> Mr. Acree:   I guess with all the appropriate signatures.
> The Court:  It's the four person [sic] – I mean, it's
> signed by the attorney for the United States. Is he talking
> about the original bill? What's he asking for?
> Mr. Acree:   Yes, I think.
> J.A. at 119-120.

Mr. Hines also requested a signed copy of the arrest warrant, which was provided to him after Mr. Hines explained to his counsel that "he has seen, quote unquote, warrants in different formats." J.A. at 120.

In response to these requests from Mr. Hines, the district court had a conversation off-the-record which was not recorded. J.A. at 120. Nonetheless, the district court did ask counsel for the government to look to see if he could locate a signed copy of the indictment for Mr. Hines' review. J.A. at 140.

The court held another status conference on July 30, 2010. J.A. at 176. At that hearing, after a scheduling conversation with counsel, Mr. Hines asked to address the court directly. J.A. at 192. Mr. Hines

9

told the court that "right now me and my counsel, Mr. Acree, are

basically having irreconcilable differences. And I was wanting to say

to the Court, I would like to dismiss Mr. Acree as my counsel." J.A. at

198. The court asked Mr. Hines what his counsel hadn't done that Mr.

Hines wanted done. J.A. at 199. Mr. Hines' response was that

> Basically I have asked my counsel, Mr. Acree, just
> basically certain things like before last week – basically
> even though he showed me a criminal complaint, as far
> as asking him about a warrant, and then I just – he just
> said they had the original indictment and everything.
> Me and my counsel we had a certain conflict. I'm not
> disputing that he hasn't filed certain motions that I have
> asked him, but there are certain things that I have asked
> my counsel. And we has went back and forth on matters
> that basically – I mean, I have done my own research on
> certain things that the Courts and the government should
> do, and me and Mr. Acree would be going at words.
> J.A. 200-201.

The district court then had an *ex parte* conversation with Mr.

Hines. J.A. at 168. Mr. Hines' counsel, Mr. Acree expressed that Mr.

Hines continued to complain about the conduct of his prior counsel,

that he was dissatisfied with the pace of the disclosure of Jencks

materials, and that he disagreed with how his criminal history was

being evaluated. J.A. at 169-170. The court noted that there was still

time to file motions and that Mr. Hines should work with his counsel.

J.A. at 172. At the end of that hearing, when asked if he was satisfied with his counsel, Mr. Hines said that he was. J.A. at 174.

That satisfaction was short-lived. On August 23, 2010, Mr. Acree filed a motion to withdraw as counsel to Mr. Hines. J.A. at 398. Mr. Acree stated that he and Mr. Hines had "reached a point where there are irreconcilable differences which have resulted in the parties inability to discuss the case." J.A. at 398.

The court promptly scheduled a hearing on Mr. Acree's motion. J.A. at 11. The court started by noting that "I cannot tell you how angry I am about [Mr. Acree's motion to withdraw]," J.A. at 409, and said "if I'm going to put somebody else in [as counsel], then I need to know precisely what it is, what is the problem." J.A. at 409. Mr. Hines personally addressed the court and explained how he had been unable to work productively with Mr. Acree to assist in his own defense. The court told Mr. Acree and Mr. Hines that "I want everything out in terms of what he thinks needs to be done" in the defense of his case. J.A. at 416. Mr. Hines' discussion with the court took several pages of transcript. J.A. at 411-423.

Mr. Hines attempted to explain to the court what he believed needed to be done to prepare for his defense. Mr. Hines told the judge

11

that his attorney had failed to find witnesses, "maybe about 15 or 16 different witnesses," J.A. at 417, though he was unable to explain who these witnesses were, where his counsel could find them, or why he thought they existed. Mr. Hines explained to the court his continued belief that his arrest was illegal because "even with a criminal complaint . . . where was the warrant for my arrest?" J.A. at 421. Mr. Hines told the court that new counsel could file a motion to dismiss the indictment, though Mr. Hines was unable to articulate a ground for such a motion. J.A. at 421. Mr. Hines said that his indictment was improper, because he was not allowed to see transcripts of the grand juror's vote to indict him. J.A. at 421-23.

During this colloquy, in response to Mr. Hines' lengthy statements about how he thought his case should be defended, the court said to Mr. Hines "I'm not sure what you're talking about," J.A. at 417, "we're talking about stuff that's going nowhere in terms of your trial" J.A. at 421, and "you've got it fixed in your mind that there are certain arguments which obviously Mr. Acree has told you aren't going anywhere and I don't think are going anywhere either," J.A. at 422, and, finally, "[t]his is going nowhere." J.A. at 423. For each idea Mr. Hines had about how his case should be handled, the court told

Mr. Hines that he was without a legal basis to assert that theory as a

defense, and was unable to convince Mr. Hines to abandon it as an

approach for how his case should be handled. Finally, the court

appointed new counsel. J.A. at 424.

After reaching that conclusion, the court told Mr. Hines how it

recommended he go forward with new counsel,

> my suggestion is that you focus on the trial and the
> evidence. You've decided to go forward to trial and
> that's your right, but to focus on the evidence in terms of
> what they have against you, which you know, and to
> focus on what defense you wish to raise so that any new
> attorney coming in is prepared to have a discussion with
> you about whatever defense you want to bring up, but
> you're focusing on two things that are not, frankly, going
> to go anywhere. . . . You can't keep focusing on stuff
> that's not going to move the ball on your trial.
> J.A. at 425-26.

The Hearing On The Motion To Suppress Statements

A few weeks before Mr. Acree filed his motion to withdraw,

the court held a hearing on pretrial motions on August 8, 2010,

including a motion to suppress statements made by Mr. Hines. J.A. at

204.

At the start of the hearing, the district court inquired about Mr.

Hines' mental health, and asked if a mental health evaluation was ever

done. J.A. at 208. When told that one had been done, the court

13

inquired whether there was any indication that there may be a question of Mr. Hines' competency. Mr. Hines' soon-to-be-relieved attorney, Mr. Acree told the court,

> I don't believe so, Your Honor. I think that – the only thing that I can say is that I think there are times when I thought I might have had that sense, but in more and more dealing with Mr. Hines, it's not my impression that he has a competency issue, but I'm not expert.
> J.A. at 211.

Mr. Acree then told the court the basis for his opinion, that his understanding was that Mr. Hines was aware of the nature of the proceedings. J.A. at 211. As Mr. Acree put it, he could not definitely say that Mr. Hines was incompetent because it was "not that I can say at this point . . . [that] he doesn't appreciate what's going on." J.A. at 211.[2] The court then moved on to the substance of Mr. Hines' motion.

Mr. Hines testified in support of his motion. J.A. at 268. He said that he was held in a cell after being processed for a full twenty-four hour period before being transferred for questioning. J.A. at 269-74. In essence, Mr. Hines testified that he was questioned on March 10, 2010. J.A. at 274. By contrast, a detective had previously testified

---

[2]     As is discussed at more length in the argument section of the brief, this is not an accurate statement of the standard for competency. A person is also incompetent if unable to assist counsel in preparing a defense.

that Mr. Hines was transferred promptly and questioned a few hours after he was arrested, on March 9, 2010. J.A. at 257.

The court denied the motion to suppress on August 11, 2010. J.A. at 354. The court determined that the detective's statement that the interview of Mr. Hines took place of March 9 was more credible than Mr. Hines' testimony that the interview took place the next day, on March 10. J.A. at 368-69. In doing so, the district court determined that "[t]he defendant could be confused or decided based on his own legal research that he could raise an issue to get his confession suppressed by changing the timing." J.A. at 371.[3]

Mr. Hines' Third Attorney And Trial

After Mr. Acree was dismissed as counsel for Mr. Hines, James Rudasill entered an appearance for Mr. Hines as appointed counsel. J.A. at 12.

Trial started on October 22, 2010. J.A. at 514. On the second day of trial, October 26, 2010, Mr. Hines' counsel Mr. Rudasill approached and asked to put on the record, *ex parte*, that he had

---

[3]      On the legal benefit that would stem from a statement that Mr. Hines was interviewed on March 10, the district court explained that "from arrest to statement, in D.C. Superior Court, the time limit is three hours, in Federal Court it is six hours for the confession to be admissible, if it's voluntary and conforms to other requirements." J.A. at 372.

advised Mr. Hines that "it would be in his best interest to dispose of this matter by entering a plea." J.A. at 759. Mr. Rudasill made this recommendation in light of Mr. Hines' confession, the testimony of his sister implicating him in the crime, and other evidence in the case. J.A. at 759. Nonetheless, Mr. Hines still wanted to continue with the trial. J.A. at 760.

At the start of trial, Mr. Rudasill told the court he had difficulty creating a defense on behalf of Mr. Hines. J.A. 766. As the court learned shortly after this disclosure by Mr. Rudasill, one of the chief reasons he was unable to create a defense was because he and Mr. Hines were unable to talk about what a possible defense would be.

On the second day of testimony in the trial, while Mr. Hines was not in the courtroom, the court asked counsel for Mr. Rudasill whether Mr. Hines will testify at trial. J.A. at 1061-62. Mr. Hines' lawyer told the court, "I've discussed many things with Mr. Hines since I have been representing him, but none of them relate on a defense at trial." J.A. at 1062. Mr. Hines' attorney continued, telling the court that Mr. Hines "does not want to discuss a trial defense and he has indicated that he will not testify." J.A. at 1062. The court noted that Mr. Hines had identified two investigators as witnesses in the

case; it asked Mr. Rudasill if these would be witnesses at the trial. Mr.

Rudasill answered,

> Your Honor, I will address that point with my client and
> hopefully he will have some – will have a meaningful
> exchange. But with respect to this trial, I'd like to place
> on the record that my client has not engaged in –
> J.A. at 1063.

At that point, the court interrupted Mr. Rudasill, and had the

Marshals' escort Mr. Hines into the courtroom. In the middle of the

second day of testimony, the court told Mr. Hines that "[w]e need to

have you focus on your defense at this point." J.A. at 1065. The court

then held another *ex parte* conference with Mr. Hines to discuss

whether he would testify. The court told Mr. Hines that "Mr. Rudasill

I think is a little concerned that you haven't fully engaged with him

about whether or not you want to testify or have any kind of defense."

J.A. at 989. Mr. Rudasill expressed that Mr. Hines would decline to

testify at his trial "and beyond that Mr. Hines has not made a request

of counsel that I pursue any specific trial strategy other than that he

was not the person who committed these acts." J.A. at 989-90.

Mr. Hines did not testify and he called no witnesses in his

defense. The jury returned a verdict of guilty on all counts the next

day. J.A. at 1180.

17

Sentencing

Mr. Hines went to sentencing on March 30, 2011. J.A. at 1218.

Before the sentencing hearing, a mental health evaluation and report

that was initiated by Mr. Hines' very first counsel was filed under

seal. J.A. at 1275. The report does not make a determination one way

or another as to whether Mr. Hines is able to assist his counsel in the

preparation of his defense. It does note that Mr. Hines suffers from

PTSD. J.A. at 1280. And, in a diagnostic form that Mr. Hines filled

out, he says that he will have successfully controlled his mental health

issues when "I can get courts to hear me." J.A. at 1286. The report

notes that Mr. Hines was previously diagnosed as Bipolar, but

questions that diagnosis. J.A. at 1279, 1280.

The government and Mr. Hines filed sentencing memoranda.

The government sought a two-level enhancement under United States

Sentencing Guidelines section 3C1.1. J.A. at 1195-1202. Mr. Hines

opposed this guidelines enhancement. J.A. at 1209-13.

The court began the sentencing hearing by discussing Mr.

Hines' prior criminal records from Virginia. J.A. at 1218-20. Of

particular concern to the court was a prior case where Mr. Hines was

found not guilty by reason of insanity. J.A. at 1219.

18

The district court then turned to a discussion of what it deemed "the competency issue." J.A. at 1221. The court stated, erroneously, that each of Mr. Hines' prior attorneys indicated to the court that Mr. Hines was competent. J.A. at 1221-22. No such statement from two of Mr. Hines' attorneys', Ms. Peterson or Mr. Rudasill, appears in the record. Mr. Acree did previously say that, "it's not my impression that he has a competency issue, but I'm not an expert." J.A. at 211.[4] The court then discussed the mental health report and states that "there aren't any issues that would raise a question about your competency." J.A. at 1222. Neither Mr. Hines, nor his counsel, were permitted an opportunity to address the court on "the competency issue." Nor were they allowed to call witnesses or present other evidence. The district court then made a finding that Mr. Hines was competent. J.A. at 1222.

As to the enhancement under section 3C1.1, the court determined that it's prior statement that Mr. Hines could have been mistaken when he said he was questioned on March 10th was not a specific finding. J.A. at 1234-35. The court then disregarded that statement and, instead, based on a later review of the transcript from

---

[4]     Mr. Acree also employed the wrong legal standard in making that statement, as is set out in more detail in the argument section, below.

the hearing, found that Mr. Hines' statement that he was interviewed on March 10th was a willful false statement. J.A. at 1236. Accordingly, the court applied section 3C1.1 and increased Mr. Hines' sentencing guidelines offense level by two.

In asking for a lenient sentence, counsel for Mr. Hines told the court that Mr. Hines' trial was little more than a "slow plea" and that "[i]t's inexplicable . . . why he went to trial." J.A. at 1250.

The court determined that Mr. Hines' guidelines range was 140 to 175 months of imprisonment. J.A. at 1239. The court imposed a sentence of 132 months in the custody of the bureau of prisons. J.A. at 1263.

## Summary of the Argument

When there is reasonable cause to believe that a person accused of a crime might be unable to help his lawyer prepare his defense because of a mental condition, the district court is required by statute to order a competency hearing. Here, it was abundantly clear to the district court that Mr. Hines was unable to assist his counsel prepare his defense. Moreover, the district court had evidence that Mr. Hines had a mental health problem – he was previously found not guilty by reason of insanity and had been diagnosed as bipolar. The district

20

court, therefore, was required to order a competency hearing. It didn't. Instead, the court made its own competency hearing without affording Mr. Hines the procedural protections of such a hearing. The district court's failure to order a competency hearing requires remand.

Moreover, the district court assessed a two-level sentencing enhancement for obstruction of justice in error. Such an enhancement can only be applied if the court finds by clear and convincing evidence that the defendant willfully lied to the court. Here, the district court ignored it's own statement that Mr. Hines could have simply been confused why he gave testimony that the district court did not credit. This does not meet the standard of clear and convincing evidence.

Finally, the Speedy Trial Act requires that the district court make detailed findings why any exclusion in the interests of justice should be made. Here, no such findings were made, and, as a result, the district court should not have excluded time for the government to bring an indictment against Mr. Hines. Because time should not have been excluded under the Speedy Trial Act, the indictment of Mr. Hines – which happened more than 30 days after he was arrested –

violated the Speedy Trial Act. As a result, the indictment must be dismissed.

## Standard of Review

A district court's failure to order a competency hearing under 18 U.S.C. § 4241 is reviewed for an abuse of discretion. *United States v. Perez*, 603 F.3d 44, 47 (D.C. Cir. 2010).

A challenge to the district court's calculation of the sentencing guidelines "shall give due deference to the district court's application of the guidelines to the facts." *United States v. Bisong*, 645 F.3d 384, 397 (D.C. Cir. 2011) (quoting 18 U.S.C. § 3742(e)). Due deference "fall[s] somewhere between de novo and 'clearly erroneous." *Id.* (*quoting United States v. Kim*, 23 F.3d 513, 517 (D.C. Cir. 1994). This Court's review of the factual findings of a district court in calculating the sentencing guidelines is for clear error. *Id.*

This Court reviews a violation of the Speedy Trial Act "*de novo* on matters of law, and for clear error as to findings of fact." *United States v. Bryant*, 523 F.3d 349, 354 (D.C. Cir. 2008) (*quoting United States v. Sanders*, 485 F.3d 654, 656 (D.C. Cir. 2007)) (internal quotations omitted).

## Argument

## I.   The District Court Erred By Not Ordering A Competency Hearing.

It is inconsistent with due process to try an incompetent person

for a criminal offense. *Cooper v. Oklahoma*, 517 U.S. 348, 354

(1996). As the Supreme Court has recognized,

> Competence to stand trial is rudimentary, for upon it
> depends the main part of those rights deemed essential to
> a fair trial, including the right to effective assistance of
> counsel, the rights to summon, to confront, and to cross-
> examine witnesses, and the right to testify on ones behalf
> or to remain silent without penalty for doing so.
> *Riggins v. Nevada*, 504 U.S. 127, 139-40 (1992) (J.
> Kennedy, concurring in the judgment) (quoted in *Cooper*,
> 517 U.S. at 354).

A person is incompetent to stand trial if he suffers from a

mental disease or defect, and, as a result one of two conditions is met:

(a) the person is unable to understand the nature and circumstances of

the proceedings against him; or (b) the person lacks a "sufficient

present ability to consult with his lawyer with a reasonable degree of

rational understanding." *Cooper*, 517 at 354. *See also United States v.*

*Jones*, 642 F.3d 1151, 1159 (D.C. Cir. 2011); 18 U.S.C. § 4241(a).

The statutory framework is clear – "[t]he court . . . *shall* order

[a competency hearing] on its own motion if there is reasonable cause

to believe that the defendant *may* presently be suffering from a mental

disease or defect rendering him mentally incompetent to the extent that he is unable to . . . assist properly in his defense." 18 U.S.C. § 4241(a) (emphasis added). A court is not free to resolve questions of competency without a competency hearing – once reasonable cause exists to believe that a person might be incompetent, section 4241(a) requires a competency hearing.

A hearing to determine competence is governed by 18 U.S.C. § 4247(d). 18 U.S.C. 4241(c). Section 4247(d), in turn, provides certain due process protections to a person who is the subject of a competency hearing, including the right to counsel, and "to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. § 4247(d). Before such a hearing, the court itself can order a hearing by a mental health professional to aid in its evaluation of the defendant's competency. 18 U.S.C. § 4241(b).

The procedural protections of sections 4241 and 4247 are not empty formalities. On the contrary, as this Court has recognized, these statutes exist to protect the due process right not to be tried if incompetent to stand trial. *United States v. Perez*, 603 F.3d 44, 46 (D.C. Cir. 2010) ("In 18 U.S.C. § 4241, Congress created procedures

24

to safeguard this right.") (citing *Medina v. California*, 505 U.S. 437, 447 (1992)).

Here, for good reason, the district court questioned Mr. Hines' competence to stand trial. J.A. at 1221. Rather than follow section 4241(a) and order a competency hearing, however, the district court here made its own competency determination without such a hearing. The district court does not have the discretion to decline to order a hearing once reasonable cause to believe that a person may be incompetent exists. "[O]nce doubt is raised, the court cannot dispel it simply by relying on contrary evidence. The protections of an adversary proceeding must be afforded the defendant." *United States v. Williams*, 113 F.3d 1155, 1160-1161 (10th Cir. 1997) (quoting *Sena v. New Mexico State Prison*, 109 F.3d 652, 655 (10th Cir. 1997)).

Because the district court did not comply with section 4241(a), Mr. Hines' conviction must be vacated and the case remanded for a competency hearing.

### A.    The district court was right to question Mr. Hines' competence.

The district court was right to question Mr. Hines' competence for two reasons. First, he had prior mental health issues. Mr. Hines was found not guilty by reason of insanity in a court in Virginia. J.A.

25

at 1221. He was previously diagnosed Bipolar, and he suffered from

Post Traumatic Stress Disorder. J.A. at 1280.

Second, Mr. Hines' conduct throughout this case leaves little

doubt that he was unable to assist counsel. Many times during the

case, the district court was confronted with Mr. Hines' inability to

meaningfully assist in his defense. Mr. Hines was unable to share with

his counsel "such phases of a defense as a defendant usually assists in

such as accounts of the facts, names of witnesses, etc." *United States

v. Caldwell*, 543 F.2d 1333, 1348 n. 63 (D.C. Cir. 1974).

At a status conference when Mr. Hines requested new counsel

on July 30, 2010, the district court made an impressive record of Mr.

Hines' difficulty in meaningfully assisting with his case. J.A. 168-

175. Mr. Hines explained that he wanted his counsel to explore a

number of issues – early production of Jencks, a speedy trial issue,

and issues surrounding Mr. Hines' criminal history. The district court

explained to Mr. Hines that these issues where either non-meritorious

or not yet ripe. J.A. at 173-74. Yet Mr. Hines was unable to let them

go.

In a hearing less than a month later, Mr. Hines was back again

asking to replace his counsel. J.A. at 401-30. The court expressed its

anger with Mr. Hines and his lack of cooperation with counsel. J.A. at 409. The court asked Mr. Hines, repeatedly, what he thought should be happening on his case. Mr. Hines' response showed how profoundly he was unable to assist in his defense; he wanted his attorney to investigate witnesses he was unable to identify or describe, J.A. at 411-13; to litigate whether the criminal complaint he was arrested on was properly issued, J.A. at 413-14; and to see the transcript of the grand jury's vote to indict him, J.A. at 413-14; 421-22. The court recognized that its discussion with Mr. Hines about what should happen with his case was "going nowhere." J.A. at 423. The court moved on, saying, "I take it the final word is that, Mr. Acree, you don't think you can work with [Mr. Hines]?" J.A. at 423. The court admonished Mr. Hines, telling him that "my is suggestion is that you focus on the trial and the evidence," and that "[y]ou can't keep focusing on stuff that's not going to move the ball at your trial." J.A. at 425-26.

Mr. Hines was unable to follow the court's suggestion. Even during trial, Mr. Hines' counsel informed the court, repeatedly, that he had no meaningful assistance from Mr. Hines in the preparation of a defense for the case. J.A. at 766; 989-90. Indeed, in the midst of the

27

second day of trial testimony, Mr. Hines' lawyer asked to put on the
record that Mr. Hines had not engaged in a conversation about his
defense. J.A. at 1063. During that conversation, the district court told
Mr. Hines that "I understand Mr. Hines, you've been focused on some
other issues. We need to have you focus on your defense at this
point." J.A. 1064-65.

Mr. Hines never did focus on his defense. As his lawyer
described it at sentencing, Mr. Hines' trial was little more than "a
slow plea." J.A. at 1250. As his lawyer told the court, "[i]t's
inexplicable . . . why he went to trial." J.A. at 1250.

These two considerations were sufficient to have the district
court raise the question of Mr. Hines' competence. That the district
court felt compelled to raise the issue demonstrates that there was
reasonable cause to think Mr. Hines may be incompetent. For that
reason, section 4241(a) required a competency hearing to determine
whether Mr. Hines was able to stand trial.

This was not a case where the defendant understood, generally,
the contours of a viable defense but was unable to understand
sophisticated points of law, such as *United States v. Perez*, 603 F.3d
44, 47 (D.C. Cir. 2010). Rather, Mr. Hines demonstrated a

28

fundamental lack of understanding or engagement in any part of a trial strategy. The district court recognized this, and recognized that Mr. Hines' past raised a real concern that he suffers from a serious mental health problem. It simply failed to then follow the law.

**B.     The basis for the district court's finding that Mr. Hines was competent was faulty.**

The district court, faced with Mr. Hines' erratic behavior and clear inability to meaningfully participate in his defense, and his mental health history, nonetheless made a finding that Mr. Hines was competent to stand trial. J.A. at 1222. This finding was not supported by the information before the court.

The district court had three reasons for finding Mr. Hines competent. Each is problematic.

        1.     The district court inaccurately stated and relied on the opinions of prior counsel.

The basis for the finding of competence was that each of Mr. Hines' lawyers in the case indicated that Mr. Hines was competent. J.A. at 1221-22. This was not accurate. Ms. Peterson did not make a statement about Mr. Hines' competence, nor did Mr. Rudasill. As discussed below, Mr. Acree's statement about competency is of

limited value. The district court was simply wrong about whether

counsel expressed an opinion about Mr. Hines' competence.

>2.     Mr. Acree's statement that Mr. Hines was competent should have been wholly disregarded.

Mr. Acree stated on the record – three weeks before he was

relieved as counsel – that "it's not my impression that he has a

competency issue." J.A. at 211. He noted, however, that "there are

times when I thought I might have the sense [that Mr. Hines is

incompetent.]" J.A. at 211.

Mr. Acree's statement is of limited value, however, and should

have been disregarded by the district court for three reasons.

First, Mr. Acree makes plain that he doesn't understand the

standard for competency. Mr. Acree explained that he could not "say

at this point . . . oh, he has a competency issue where he doesn't

appreciate what's going on." J.A. at 211. There are two ways a person

can be incompetent. One is, as Mr. Acree identifies, that the person

may be "unable to understand the nature and consequences of the

proceedings against him." 18 U.S.C. § 4241(a). The other, however, is

that the person is unable to "assist properly in his defense." *Id.*

Second, Mr. Acree's representation of Mr. Hines is evidence

that Mr. Hines is unable to work with his lawyer to effectively assist

in his defense. Less than two weeks after Mr. Acree told the court that
Mr. Hines was competent, he asked the court to relieve him as counsel
because he and Mr. Hines had an "inability to discuss the case." J.A.
at 398.

Third, Mr. Acree's opinion was based on the misunderstanding
that the mental health evaluation done of Mr. Hines was done for the
purpose of evaluating competency. As Ms. Peterson told the court in
an earlier proceeding, it wasn't – the evaluation was done to attempt
to persuade the government to offer a better plea. J.A. at 37.

The district court should have disregarded Mr. Acree's
statement. It reflected an inaccurate understanding of the law, it was
undermined by Mr. Acree's history with Mr. Hines, and it was based
on a faulty understanding of the purpose of the mental health
evaluation.

> 3.    The mental health evaluation was done for a
> different purpose and does not opine on Mr. Hines'
> competence.

Without the opinion of counsel, the sole basis for concluding
that Mr. Hines was competent to stand trial was the report of a mental
health expert who was asked to evaluate Mr. Hines by his initial
attorney. *See* J.A. at 1276-87. While the report does detail Mr. Hines'

very traumatic childhood, diagnoses him with Post Traumatic Stress Disorder, and discusses a prior diagnosis that he is Bipolar, the report does not make any conclusions about his competence to stand trial, nor does it contain a discussion of questions of competence. Presumably this was because the report was not prepared to address competence to stand trial, but rather, as Mr. Hines' attorney explained, "for the purposes of trying to convince the government to give Mr. Hines a better plea offer." J.A. at 37.

Nor is this a case like *United States v. Jones*, 642 F.3d 1151, 1160 (D.C. Cir. 2011), where the court ordered a mental health examination to determine competency but the defendant refused to meet with the mental health professional. Mr. Hines was willing to meet, and was cooperative during his initial evaluation.[5] The mental health evaluation was simply done for a purpose other than to determine competency.

Under section 4241(a), a district court is not entitled to make a finding of competence to stand trial without a competency hearing,

---

[5]    Moreover, unlike *Jones*, where the defendant had nothing in his past that suggested that he may have a competency problem, *Jones*, 642 F.3d at 1160, Mr. Hines' mental health history was documented and significant. He was previously diagnosed Bipolar, J.A. at 1279, in addition to having previously been found not guilty by reason of insanity.

once reasonable cause to believe a person may be incompetent exists.

Here, the court did just that. The district court's misapplication of the

law requires remand.

## II.     The District Court Erred In Applying A Two-Level Enhancement For Obstruction of Justice.

The district court applied a two-level enhancement for

obstruction of justice under United States Sentencing Guideline

section 3C1.1, based on Mr. Hines' testimony at a motions hearing

that was not credited. The district court's application of this guidelines

enhancement was error.

Because the district court erred in its calculation of the

sentencing guidelines, Mr. Hines' sentence was procedurally

unreasonable; for that reason, this case should be remanded for

resentencing. *United States v. Tann*, 532 F.3d 868, 874 (D.C. Cir.

2008) ("we do precisely what we did prior to Booker – determine

whether the district court correctly calculated the Guidelines range

and remand for resentencing if it did not."); *United States v. Dorcely*,

454 F.3d 366, 373 (D.C. Cir. 2006) ("an unreasonable sentence is a

sentence imposed in violation of the law.")

Mr. Hines testified that he was questioned by the police on

March 10, 2010 as a part of the hearing on his motion to suppress

33

statements. Ruling on the motion to suppress, the district court determined that he was questioned on March 9, 2010, and that "[t]he defendant could be confused or decided based on his own legal research that he could raise an issue to get his confession suppressed by changing the timing." J.A. at 371.

At sentencing, the district court reversed course. While the court noted its prior statement that Mr. Hines "could be confused" when he made the statement that was determined to be false, the district court decided that this statement was not a formal finding, and, instead, that Mr. Hines willfully testified falsely. J.A. at 1237-38. The court indicated that it made this determination by clear and convincing evidence, J.A. at 1237, as this Court has said it must in *United States v. Montague*, 40 F.3d 1251, 1255-56 (1994) (quoting *United States v. United States v. Dunnigan*, 507 U.S. 87, 95 (1993)).

The district court, however, was wrong that the evidence that Mr. Hines willfully made a false statement met a clear and convincing standard.

The district court previously concluded that it was possible that Mr. Hines was mistaken, just days after seeing Mr. Hines' testimony at the hearing on the motion to suppress. The district court, at

sentencing, determined that this was not a formal "finding" of the court, and, therefore, could be ignored. J.A. at 1235-36. Regardless of whether it was a finding of the court, the district court's description of Mr. Hines' mental state just days after his testimony is significant evidence of Mr. Hines' mental state. It is powerful evidence that it was not actually clear what Mr. Hines' mental state was.

This Court has explained that "clear and convincing" is a high bar. For evidence to meet this high standard "requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain." *Assn of American Physicians and Surgeons v. Clinton*, 187 F.3d 655, 660 (D.C. Cir 1999) (*quoting United States v. Montague*, 309 U.S. App. D.C. 220, 40 F.3d 1251, 1255 (D.C. Cir. 1994)).

Here, because there is strong evidence – from the district court itself – that Mr. Hines did not make a willfully false statement, the district court was unable to conclude by clear and convincing evidence that Mr. Hines' statement was a willful lie. As a result, the district court erred in applying an enhancement under section 3C1.1. This error requires remand for resentencing.

35

### III.   The District Court Did Not Make Adequate Findings That Extending Time Under The Speedy Trial Act Was In The Interests Of Justice.

The district court erred by excluding time from the Speedy Trial clock to allow the government more than thirty-days to charge Mr. Hines after he was arrested. Counsel for the parties twice moved to extend time under the Speedy Trial Act to permit the government more time to indict Mr. Hines. In each case, the district court granted the motion without making the required findings – relying, instead, on the consent of the parties. Such reliance is specifically not permitted under the Supreme Court's decision in *Zedner v. United States*, 547 U.S. 489 (2006). Moreover, counsel for Mr. Hines was constitutionally ineffective for failing to raise this speedy trial issue in the district court. *United States v. Marshall*, 2011 U.S. App. LEXIS 11686, No. 09-3140 (D.C. Cir. June 9, 2011). For this reason, the indictment charging Mr. Hines must be dismissed.

The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested," 18 U.S.C. § 3161(b), but the Act permits exclusions. *See* 18 U.S.C. § 3161(h); *see also Zedner*, 547 U.S. 489,

36

*United States v. Bryant*, 523 F.3d 349 (D.C. Cir. 2008), *United States v. Sanders*, 485 F.3d 654 (D.C. Cir. 2007). Under 18 U.S.C. § 3161(h), certain periods of delay are excluded from the thirty-day period — that is, they do not count against the statutory "speedy-trial clock."

Such exclusions should not be automatic, however. The Act specifically requires the court to analyze whether, in the interest of justice, a continuance outweighs the best interests of the public and defendant in a speedy trial by considering the non-exhaustive list of factors contained in the Act. 18 U.S.C. § 3161(h)(7). And the Act also requires the court to make an on-the-record finding explaining why the ends of justice served by granting the continuance outweigh the interests of the public and defendant in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). *See Zedner*, 547 U.S. at 506-07.

The requirement of these on-the-record findings for an exclusion from the Speedy Trial Act is meaningful. As the Supreme Court noted, Congress – in crafting the Act – established the ends-of-justice exclusion "to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases" but tempered this flexibility, aware that it "could get out of hand and subvert the

Act's detailed scheme." *Zedner*, 547 U.S. at 508-09. Section

3161(h)(8) exists to "counteract substantive open-endedness with

procedural strictness" and "demands on-the-record findings and

specifies in some detail certain factors that a judge must consider in

making those findings." *Zedner*, 547 U.S. at 509.

These on-the-record findings were not made in this case. As a

result, the time under the Speedy Trial Act to bring an indictment

against Mr. Hines should not have been excluded.

## A. The district court's findings that an exclusion of time was in the interests of justice were perfunctory.

The district court did not make explicit findings balancing the

reason for an exclusion of time against the interests of the public or

the defendant in a speedy trial.

Magistrate Judge Deborah A. Robinson created the first

exclusion of time, and her findings were little more than a restatement

of the request to exclude time:

> that it is in the interest of justice, and outweighs the
> interest of the public and the defendant in a speedy trial,
> to exclude the delay resulting from the ongoing plea
> negotiations.
> J.A. at 25.

38

The second motion to exclude time, on April 30, 2010, asked for:

> an exclusion on the Speedy Trial Act for additional time to allow defendant an opportunity to complete a mental health evaluation and allow the parties to continue plea discussions on the grounds that such discussions are in the interest of justice and outweigh the interests of the public and the defendant in a speedy trial.
> J.A. at 27.

Magistrate Judge Facciola granted the April 30, 2010 motion on May 4, 2010 by Minute Order. J.A. at 5. No findings of any kind were made.

The district court sought to make more explicit why an exclusion of time was appropriate and in the interests of justice in its memorandum opinion denying Mr. Hines' Motion to Reconsider Bond, issued on July 20, 2010. J.A. at 157-67.[6] The district court wrote that:

> the Court now makes clear that it explicitly finds that the ends of justice are served by excluding the time from April 6, 2010 through June 7, 2010, for purposes of

---

[6]    Although it is an acceptable practice for the district court to make an end-of-justice finding upon ruling on the motion to dismiss, the United States Supreme Court has cautioned that "[t]he best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance." *Zedner*, 547 U.S. at 507 n.7 (stating at minimum those findings had to be put on the record by the time a district court rules on a defendant's motion to dismiss).

permitting the ongoing plea negotiations, and that such
exclusion outweighs the best interest of the public and
the defendant in a speedy trial [and the time] is therefore
properly excluded under section 3161(h)(7)(A).
J.A. at 166.[7]

As is discussed below, these minimalist statements that an

exclusion is warranted to meet the ends of justice are not sufficient to

exclude time under the Speedy Trial Act.

### B.   Perfunctory findings are not sufficient to exclude time.

A district court must do more than mention the ends of justice

are served by an exclusion of time – a "passing reference to the

'interests of justice'" is not enough because it "does not indicate that

the judge seriously considered the 'certain factors' that

3131(h)([7])(A) specifies." *United States v. Bryant*, 523 F.3d 349, 361

---

[7]     The district court's opinion responded, of course, to the motion
to reconsider bond under 18 U.S.C. § 3164(b) – not a motion to
dismiss the indictment because it violated the thirty-day time period to
bring an indictment under 18 U.S.C. § 3161(b). Nonetheless, the legal
question in the motion to reconsider bond – whether the exclusions
from the Speedy Trial clock were in the interest of justice – is
identical to the question in a motion to dismiss for a violation of
section 3161(b). Both questions turn the propriety of an exclusion
under section 3161(h)(7)(A).

(D.C. Cir. 2008).[8] *See also Zedner*, 547 U.S. at 506 (holding that before a judge could toll the speedy trial clock under section 3161(h)(7)(A), the judge must make "express findings" to indicate *why the ends of justice were served by a continuance*) (emphasis added). *See also*, *United States v. Sanders*, 485 F.3d 654, 659 (D.C. Cir. 2007) (the Act's requirement was not met when the district court made no mention of the countervailing interests when performing its ends-of-justice analysis).

In *Bryant*, the court rejected the adequacy of an ends-of-justice speedy trial clock exclusion, holding that "implicit" findings are insufficient to invoke the section 3161(h)(7)(A) exclusion. *Bryant*, 523 F.3d at 360. There the court noted that the district court had sought to accommodate the schedules of both parties when setting the trial date and noted that it was "in the interest of justice" to "coordinate the schedules of the prosecutor, the two defense lawyers, and the Court," because "otherwise we would force one or the other of

---

[8]     The Court's opinion in *Bryant* cites to section 3161(h)(8)(A), which was the correct citation at the time of that opinion. However, section 3161 was recodified in Section 13 of the Judicial and Technical Amendments Act of 2008, 110 P.L. 406, on October 13, 2008. What was, at the time of the *Bryant* opinion, section 3161(h)(8)(A) is, now section 3161(h)(7)(A). This brief will cite to the current statute – section 3161(h)(7)(A).

the defendants to go to trial with somebody who is not their lawyer, or a lawyer who is just coming off another trial." *Id*. This Court held that this was simply not enough explanation – yet it's more explanation than the district court provided here.

And in *Sanders*, an exclusion under Speedy Trial Act was determined not to have met the Act's requirements as the court made a mere scant finding when granting the interest of justice continuance. *Sanders*, 485 F.3d at 659. In granting the continuance the court noted that "there was some discussion of the Speedy Trial Act . . . [and] it is in the interest of justice to add those 15 days to the clock." *Id*. On appeal it was determined that the district court's ends of justice analysis was insufficient.  The Act's requirement of on-the-record findings that a continuance "outweigh[ed] the best interest of the public and the defendant in a speedy trial" was not met because the district court made no mention of the countervailing interests. *Id.* (citing 18 U.S.C. § 3161(h)(7)(A)).

Indeed, there is no explanation in the court's order for why the speedy trial clock had to be excluded to allow plea conversations to happen – plea conversations can happen even while the speedy trial

42

clock is ticking. In fact, plea conversations continued in this very case after Mr. Hines was indicted. *See* J.A. at 103-04.

### C.     The defendant's consent to exclude time is not sufficient.

The United States Supreme Court has made clear that the purpose of the Act was not "solely to protect the defendant's right to a speedy trial" but "was designed with the public interest firmly in mind." *Zedner*, 547 U.S. at 500-01. For that reason the Court determined that a party's mere consent or waiver of the Act's strict statutory scheme is insufficient to permit an ends of justice exclusion of time. *Id*. at 500. In short, a defendant's acquiescence to an exclusion of time is not sufficient – the court must make independent findings how an exclusion meets the interests of justice. Under *Zedner*, it is irrelevant whether Mr. Hines' counsel requested that the exclusion be granted.

### D.     Mr. Hines' counsel was constitutionally ineffective for failing to move to dismiss the indictment in light of the failure to indict Mr. Hines within the time required by the Act.

Mr. Hines' counsel filed a motion for Mr. Hines' release from custody because his rights under the Speedy Trial Act were violated. J.A. at 112-13. This motion should also have included a request that

the indictment against Mr. Hines be dismissed as a violation of the

thirty-day time period to bring an indictment after arrest, as set out in

18 U.S.C. § 3161(b). Indeed, when the motion was filed, Mr. Hines

had complained that his speedy trial rights were violated by extending

the time to indict beyond the thirty-day period in the Speedy Trial

Act. J.A. at 69. Mr. Hines' first attorney, Michelle Peterson, discussed

such a motion at a status conference in the case. J.A. at 42. Yet no

motion to dismiss the indictment because it violated the thirty-day

period was filed.

Such a motion would have been meritorious, for the reasons set

out above. As a result, the failure to file such a motion was

constitutionally ineffective, and deprived Mr. Hines of his rights

under the Sixth Amendment.

This Court determined that the failure to file a meritorious

Speedy Trial motion violates the Sixth Amendment's guarantee of

effective counsel less than a year ago in *United States v. Marshall*,

2011 U.S. App. LEXIS 11686, No. 09-3140 (D.C. Cir. June 9, 2011).

In *Marshall*, as here, counsel filed a Speedy Trial motion seeking

other relief and for another reason, yet never filed the one motion that

had merit. *United States v. Marshall*, at * 15 ("Indeed, counsel did

pursue the Speedy Trial Act violation in two separate filings, but in both failed to make the argument that could have resulted in dismissal of the indictment."). And, here, as in *Marshall*, there is no conceivable reason for not pursuing such a motion. *Id.* at * 14-15.

*Marshall* is, of course, unpublished. But the reasoning of the case is sound. Though, of course, this ineffective assistance of counsel claim is being raised for the first time on appeal, the record before the Court is sufficient to resolve the ineffective assistance claim without remand. *Marshall*, at *14 (citing *United States v. Mouling*, 557 F.3d 658, 668-69 (D.C. Cir. 2009), *cert. denied*, 130 S. Ct. 795, 175 L. Ed. 2d 559 (2009); *United States v. Fennell*, 53 F.3d 1296, 1303-04, (D.C. Cir. 1995)).

Both elements of the *Strickland* test are satisfied. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong, of course, is that counsel's conduct in the trial court fell below an objective standard of reasonableness. *Id.* at 688. The second is that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

As to the first prong, it fell below an objective standard of reasonableness to litigate the Speedy Trial issue as to the ninety-day

clock only, when relief on the thirty-day clock raised precisely the same issue but would allow the district court to dismiss Mr. Hines' indictment. Moreover, prior counsel for Mr. Hines suggested that such a motion was appropriate, J.A. at 42, and Mr. Hines had raised the issue himself. J.A. at 69-71. There was simply no reason to raise the issue in the context of a motion for release pending trial as to the ninety-day clock and not to the thirty-day clock.

The failure to challenge the adequacy of the exclusion as to the thirty-day clock also meets *Strickland*'s second prong as well – "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. As is set out above in more detail, the time that was excluded under the thirty-day clock should not have been. As a result, the indictment against Mr. Hines should have been dismissed.

## Conclusion

*The Court should vacate Mr. Hines' conviction and remand for a competency hearing.*

By statute, the district court was required to give Mr. Hines the procedural protections of a competency hearing if there was reasonable cause to think he may be unable to assist in the preparation of his defense because of a mental disease or defect. The district court

46

violated this statute. Though there was reasonable cause to think Mr.
Hines may be incompetent, the district court did not give him a
hearing. Instead, the district court made its own finding without such a
hearing. This is simply not the law. For that reason, Mr. Hines'
conviction must be vacated and the case remanded for a competency
hearing.

> *The Court should remand for resentencing in light of the error*
> *in imposing an enhancement under section 3C1.1.*

The district court found that Mr. Hines obstructed justice when
gave testimony that was not credited. The court imposed a guidelines
enhancement based on that testimony. Yet to apply that guidelines
enhancement requires a finding that the defendant willfully lied to the
court by clear and convincing evidence. Here, because the court
previously said that Mr. Hines could have been mistaken, the court
was not able to determine that Mr. Hines affirmatively lied by clear
and convincing evidence. This error in the application of the
guidelines renders Mr. Hines' sentence procedurally unreasonable and
requires a remand for resentencing.

*The Court should remand with instructions to dismiss the indictment.*

The district court did not adequately determine that the time for

indicting Mr. Hines under the Speedy Trial Act was excluded.

Because Mr. Hines' rights under the Speedy Trial Act were violated,

the indictment against him should be dismissed.

Respectfully submitted,

/s/     Matthew G. Kaiser

Matthew G. Kaiser

THE KAISER LAW FIRM PLLC

910 17th Street, N.W., Suite 800

Washington, DC 20006

(202) 640-2850

## Certificate of Compliance

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e):

    [ X ] this brief contains [*10,422*] words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or

    [   ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii)

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6):

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: <u>January 17, 2012</u>        <u>/s/ Matthew G. Kaiser</u>
                                      Matthew G. Kaiser
                                      Counsel for Appellant

## Certificate of Filing and Service

I hereby certify that on this 17th day of January, 2012, I caused the Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Roy W. McLeese, III
> UNITED STATES ATTORNEY'S OFFICE
> Appellate Division
> 555 4th Street, NW, Room 8104
> Washington, DC  20530
> (202) 252-6829
>
> *Counsel for Appellee*

I further certify that on this 17th day of January, 2012, I caused the required number of bound copies of the Brief of Appellant to be hand-filed with the Clerk of the Court.

/s/ Matthew G. Kaiser
*Counsel for Appellant*

# Addendum

# Table of Contents

**Page**

**Statutes**

18 U.S.C. § 3161.................................................................. 1

18 U.S.C. § 4241.................................................................. 9

18 U.S.C. § 4247................................................................ 11

**18 U.S.C. § 3161.**
**TIME LIMITS AND EXCLUSIONS**

**(a)** In any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, shall, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain, or list it for trial on a weekly or other short-term trial calendar at a place within the judicial district, so as to assure a speedy trial.

**(b)** Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

**(c)**

> **(1)** In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. If a defendant consents in writing to be tried before a magistrate judge on a complaint, the trial shall commence within seventy days from the date of such consent.

> **(2)** Unless the defendant consents in writing to the contrary, the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel or expressly waives counsel and elects to proceed pro se.

**(d)**

> **(1)** If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter a complaint is filed against such defendant or

1

individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

(**2**) If the defendant is to be tried upon an indictment or information dismissed by a trial court and reinstated following an appeal, the trial shall commence within seventy days from the date the action occasioning the trial becomes final, except that the court retrying the case may extend the period for trial not to exceed one hundred and eighty days from the date the action occasioning the trial becomes final if the unavailability of witnesses or other factors resulting from the passage of time shall make trial within seventy days impractical. The periods of delay enumerated in section 3161 (h) are excluded in computing the time limitations specified in this section. The sanctions of section 3162 apply to this subsection.

(**e**) If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final. If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical. The periods of delay enumerated in section 3161 (h) are excluded in computing the time limitations specified in this section. The sanctions of section 3162 apply to this subsection.

(**f**) Notwithstanding the provisions of subsection (b) of this section, for the first twelve-calendar-month period following the effective date of this section as set forth in section 3163 (a) of this chapter the time

2

limit imposed with respect to the period between arrest and indictment by subsection (b) of this section shall be sixty days, for the second such twelve-month period such time limit shall be forty-five days and for the third such period such time limit shall be thirty-five days.

**(g)** Notwithstanding the provisions of subsection (c) of this section, for the first twelve-calendar-month period following the effective date of this section as set forth in section 3163 (b) of this chapter, the time limit with respect to the period between arraignment and trial imposed by subsection (c) of this section shall be one hundred and eighty days, for the second such twelve-month period such time limit shall be one hundred and twenty days, and for the third such period such time limit with respect to the period between arraignment and trial shall be eighty days.

**(h)** The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

>    **(1)** Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

>>    **(A)** delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;

>>    **(B)** delay resulting from trial with respect to other charges against the defendant;

>>    **(C)** delay resulting from any interlocutory appeal;

>>    **(D)** delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

>>    **(E)** delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;

3

(**F**) delay resulting from transportation of any defendant from another district, or to and from places of examination or hospitalization, except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable;

(**G**) delay resulting from consideration by the court of a proposed plea agreement to be entered into by the defendant and the attorney for the Government; and

(**H**) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

(**2**) Any period of delay during which prosecution is deferred by the attorney for the Government pursuant to written agreement with the defendant, with the approval of the court, for the purpose of allowing the defendant to demonstrate his good conduct.

(**3**)

(**A**) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness.

(**B**) For purposes of subparagraph (A) of this paragraph, a defendant or an essential witness shall be considered absent when his whereabouts are unknown and, in addition, he is attempting to avoid apprehension or prosecution or his whereabouts cannot be determined by due diligence. For purposes of such subparagraph, a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial.

4

**(4)** Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.

**(5)** If the information or indictment is dismissed upon motion of the attorney for the Government and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge.

**(6)** A reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.

**(7)**

**(A)** Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

**(B)** The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

**(i)** Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

**(ii)** Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

**(iii)** Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161 (b), or because the facts upon which the grand jury must base its determination are unusual or complex.

**(iv)** Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

**(C)** No continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government.

**(8)** Any period of delay, not to exceed one year, ordered by a district court upon an application of a party and a finding by a preponderance of the evidence that an official request, as defined in section 3292 of this title, has been made for evidence of any such offense and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

**(i)** If trial did not commence within the time limitation specified in section 3161 because the defendant had entered a plea of guilty or nolo contendere subsequently withdrawn to any or all charges in an indictment or information, the defendant shall be deemed indicted with respect to all charges therein contained within the meaning of section 3161, on the day the order permitting withdrawal of the plea becomes final.

**(j)**

**(1)** If the attorney for the Government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly—

**(A)** undertake to obtain the presence of the prisoner for trial; or

**(B)** cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.

**(2)** If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the Government who caused the detainer to be filed.

**(3)** Upon receipt of such notice, the attorney for the Government shall promptly seek to obtain the presence of the prisoner for trial.

**(4)** When the person having custody of the prisoner receives from the attorney for the Government a properly supported request for temporary custody of such prisoner for trial, the prisoner shall be made available to that attorney for the Government (subject, in cases of interjurisdictional transfer, to any right of the prisoner to contest the legality of his delivery).

**(k)**

**(1)** If the defendant is absent (as defined by subsection (h)(3) on the day set for trial, and the defendant's subsequent appearance before the court on a bench warrant or other process or surrender to the court occurs more than 21 days after the day set for trial, the defendant shall be deemed to have first appeared before a judicial officer of the court in which the information or indictment is pending within the meaning of subsection (c) on the date of the defendant's subsequent appearance before the court.

**(2)** If the defendant is absent (as defined by subsection (h)(3) on the day set for trial, and the defendant's subsequent appearance before the court on a bench warrant or other process or surrender to the court occurs not more than 21 days after the day set for trial, the time limit required by subsection (c), as extended by subsection (h), shall be further extended by 21 days.

## 18 U.S.C. § 4241.
### DETERMINATION OF MENTAL COMPETENCY TO STAND TRIAL TO UNDERGO POSTRELEASE PROCEEDINGS

**(a) Motion To Determine Competency of Defendant.—** At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

**(b) Psychiatric or Psychological Examination and Report.—** Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247 (b) and (c).

**(c) Hearing.—** The hearing shall be conducted pursuant to the provisions of section 4247 (d).

**(d) Determination and Disposition.—** If, after the hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court shall commit the defendant to the custody of the Attorney General. The Attorney General shall hospitalize the defendant for treatment in a suitable facility—

> **(1)** for such a reasonable period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and

9

**(2)** for an additional reasonable period of time until—

> **(A)** his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or

> **(B)** the pending charges against him are disposed of according to law;

whichever is earlier.

If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

**(e) Discharge.—** When the director of the facility in which a defendant is hospitalized pursuant to subsection (d) determines that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the defendant's counsel and to the attorney for the Government. The court shall hold a hearing, conducted pursuant to the provisions of section 4247 (d), to determine the competency of the defendant. If, after the hearing, the court finds by a preponderance of the evidence that the defendant has recovered to such an extent that he is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings. Upon discharge, the defendant is subject to the provisions of chapters 207 and 227.

**(f) Admissibility of Finding of Competency.—** A finding by the court that the defendant is mentally competent to stand trial shall not prejudice the defendant in raising the issue of his insanity as a defense to the offense charged, and shall not be admissible as evidence in a trial for the offense charged.

10

**18 U.S.C. § 4247.**
**GENERAL PROVISIONS FOR CHAPTER**

**(a) Definitions.—** As used in this chapter—

**(1)** "rehabilitation program" includes—

> **(A)** basic educational training that will assist the individual in understanding the society to which he will return and that will assist him in understanding the magnitude of his offense and its impact on society;

> **(B)** vocational training that will assist the individual in contributing to, and in participating in, the society to which he will return;

> **(C)** drug, alcohol, and sex offender treatment programs, and other treatment programs that will assist the individual in overcoming a psychological or physical dependence or any condition that makes the individual dangerous to others; and

> **(D)** organized physical sports and recreation programs;

**(2)** "suitable facility" means a facility that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant;

**(3)** "State" includes the District of Columbia;

**(4)** "bodily injury" includes sexual abuse;

**(5)** "sexually dangerous person" means a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others; and

**(6)** "sexually dangerous to others" with respect [1] a person, means that the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have

11

serious difficulty in refraining from sexually violent conduct or child molestation if released.

**(b) Psychiatric or Psychological Examination.—** A psychiatric or psychological examination ordered pursuant to this chapter shall be conducted by a licensed or certified psychiatrist or psychologist, or, if the court finds it appropriate, by more than one such examiner. Each examiner shall be designated by the court, except that if the examination is ordered under section 4245, 4246, or 4248, upon the request of the defendant an additional examiner may be selected by the defendant. For the purposes of an examination pursuant to an order under section 4241, 4244, or 4245, the court may commit the person to be examined for a reasonable period, but not to exceed thirty days, and under section 4242, 4243, 4246, or 4248, for a reasonable period, but not to exceed forty-five days, to the custody of the Attorney General for placement in a suitable facility. Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court. The director of the facility may apply for a reasonable extension, but not to exceed fifteen days under section 4241, 4244, or 4245, and not to exceed thirty days under section 4242, 4243, 4246, or 4248, upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant.

**(c) Psychiatric or Psychological Reports.—** A psychiatric or psychological report ordered pursuant to this chapter shall be prepared by the examiner designated to conduct the psychiatric or psychological examination, shall be filed with the court with copies provided to the counsel for the person examined and to the attorney for the Government, and shall include—

> **(1)** the person's history and present symptoms;

> **(2)** a description of the psychiatric, psychological, and medical tests that were employed and their results;

> **(3)** the examiner's findings; and

> **(4)** the examiner's opinions as to diagnosis, prognosis, and—

12

**(A)** if the examination is ordered under section 4241, whether the person is suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense;

**(B)** if the examination is ordered under section 4242, whether the person was insane at the time of the offense charged;

**(C)** if the examination is ordered under section 4243 or 4246, whether the person is suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another;

**(D)** if the examination is ordered under section 4248, whether the person is a sexually dangerous person;

**(E)** if the examination is ordered under section 4244 or 4245, whether the person is suffering from a mental disease or defect as a result of which he is in need of custody for care or treatment in a suitable facility; or

**(F)** if the examination is ordered as a part of a presentence investigation, any recommendation the examiner may have as to how the mental condition of the defendant should affect the sentence.

**(d) Hearing.—** At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing shall be represented by counsel and, if he is financially unable to obtain adequate representation, counsel shall be appointed for him pursuant to section 3006A. The person shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing.

**(e) Periodic Report and Information Requirements.—**

13

**(1)** The director of the facility in which a person is committed pursuant to—

> **(A)** section 4241 shall prepare semiannual reports; or
>
> **(B)** section 4243, 4244, 4245, 4246, or 4248 shall prepare annual reports concerning the mental condition of the person and containing recommendations concerning the need for his continued commitment. The reports shall be submitted to the court that ordered the person's commitment to the facility and copies of the reports shall be submitted to such other persons as the court may direct. A copy of each such report concerning a person committed after the beginning of a prosecution of that person for violation of section 871, 879, or 1751 of this title shall be submitted to the Director of the United States Secret Service. Except with the prior approval of the court, the Secret Service shall not use or disclose the information in these copies for any purpose other than carrying out protective duties under section 3056 (a) of this title.

**(2)** The director of the facility in which a person is committed pursuant to section 4241, 4243, 4244, 4245, 4246, or 4248 shall inform such person of any rehabilitation programs that are available for persons committed in that facility.

**(f) Videotape Record.—** Upon written request of defense counsel, the court may order a videotape record made of the defendant's testimony or interview upon which the periodic report is based pursuant to subsection (e). Such videotape record shall be submitted to the court along with the periodic report.

**(g) Habeas Corpus Unimpaired.—** Nothing contained in section 4243, 4246, or 4248 precludes a person who is committed under either of such sections from establishing by writ of habeas corpus the illegality of his detention.

**(h) Discharge.—** Regardless of whether the director of the facility in which a person is committed has filed a certificate pursuant to the

provisions of subsection (e) of section 4241, 4244, 4245, 4246, or 4248, or subsection (f) of section 4243, counsel for the person or his legal guardian may, at any time during such person's commitment, file with the court that ordered the commitment a motion for a hearing to determine whether the person should be discharged from such facility, but no such motion may be filed within one hundred and eighty days of a court determination that the person should continue to be committed. A copy of the motion shall be sent to the director of the facility in which the person is committed and to the attorney for the Government.

**(i) Authority and Responsibility of the Attorney General.—** The Attorney General—

> **(A)** may contract with a State, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter;

> **(B)** may apply for the civil commitment, pursuant to State law, of a person committed to his custody pursuant to section 4243, 4246, or 4248;

> **(C)** shall, before placing a person in a facility pursuant to the provisions of section 4241, 4243, 4244, 4245, 4246, or 4248, consider the suitability of the facility's rehabilitation programs in meeting the needs of the person; and

> **(D)** shall consult with the Secretary of the Department of Health and Human Services in the general implementation of the provisions of this chapter and in the establishment of standards for facilities used in the implementation of this chapter.

**(j)** Sections 4241, 4242, 4243, and 4244 do not apply to a prosecution under an Act of Congress applicable exclusively to the District of Columbia or the Uniform Code of Military Justice.